**ENERGY SMART INDUSTRY, LLC, Plaintiff,**

v.

**MORNING VIEW HOTELS– BEVERLY HILLS, LLC, Defendant.**

Case No. 14–cv–23284–UU.

United States District Court, S.D. Florida.

Signed June 3, 2015.

Murray Hudson, Murray Hudson, LLC, Boca Raton, FL, for Plaintiff.

Freddy Funes, Gerald Edward Greenberg, Adam Michael Schachter, Gelber Schachter & Greenberg, P.A., Miami, FL, for Defendant.

## ORDER

URSULA UNGARO, District Judge.

THIS CAUSE comes before the Court upon Cross–Motions for Partial Summary Judgment. D.E. 60 and 62.

THE COURT has considered the motions and the pertinent portions of the record, and is otherwise fully advised in the premises. The motions have been fully briefed and are ripe for determination.

## BACKGROUND

The following facts are not in dispute.[1] Morning View Hotels–Beverly Hills, LLC ("Morning View") operates a hotel in Los

---

1. ESI disputes several facts supported by record evidence without pointing to contradictory evidence on the record. The Court treats these facts as undisputed. *See* Fed.R.Civ.P. 56 ("A party asserting that a fact . . . is genu-

Angeles called the Mr. C Beverly Hills Hotel and contracted with Energy Smart Industry, LLC ("ESI") to have the hotel's lighting retrofitted with energy-efficient LED lights. Undisputed Statement of Fact, ¶¶ 1–4 (D.E. 61 and 84). The agreement was entered into on November 1, 2012, and provides as follows:

2. SCOPE OF WORK: ... ESI's Work shall consist of the tasks enumerated in the Contract Documents together with such ancillary tasks and services which are reasonably inferable there from....

3. CONTRACT PRICE: Client agrees to pay ESI, a fee for all services and installed property that are the subject of this Agreement, as specified hereafter in **Exhibit A** .... ESI, payment is annually **$44,233.00,** in Monthly installments of **$3,686.00 per month for 60 months (5) years.** In consideration for the performance of the Work, Client shall pay ESI an amount equal to $3,686.00 per month, each such payment to ESI being payable on the first (1st) day of each month during the 60 months (5) year term of this Agreement following the completion of the Work....

4. COMPUTATIONS AND FORM OF PAYMENT.

ii) Client SHALL pay ESI within there (3) business days following certification by ESI that the installation work under this Agreement been completed by ESI pursuant to the terms hereof....

* * *

6. CHANGE ORDERS: Any change involving either an increase or decrease in the Savings Payment or the

inely disputed must support the assertion by: (A) citing to particular parts of materials in the record ...; or (B) showing that ... an adverse party cannot produce admissible evidence to support the fact.").

Contract Time may be accomplished only by a written agreement executed by both parties.

Agreement, ¶¶ 2–4; 6 (D.E. 61–1). The work identified in Exhibit A to the agreement includes retrofitting of lighting in the hotel lobby, second to twelfth floors, parking garage and other areas. Agreement, Exhibit A. With Morning View's permission, ESI broke the work into five separate phases. Undisputed Statement of Fact, ¶ 16 (D.E. 61 and 84); Molasky Depo. 45:8–46:6 (D.E. 61–3).

After completing Phase One, ESI requested payment for work done to date. Undisputed Statement of Fact, ¶¶ 18, 22, 23 (D.E. 61 and 84); Jagger Decl., ¶¶ 6–15 (D.E. 61–2). Phase One had consisted of retrofitting lights illuminating the hotel's artwork in the guest rooms and, of all the phases, was expected to produce the greatest energy savings for the hotel. (D.E. 61 and 84) When Morning View did not pay, ESI stopped working on the project and on February 21, 2014, deemed Morning View to be in default. Undisputed Statement of Facts, at ¶¶ 23–28 (D.E. 61 and 84).

ESI never completed any of the project's other four phases. *Id.* at ¶¶ 48, 49, 52. Instead, it filed suit against Morning View on July 29, 2014, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida, bringing claims of: (1) breach of contract; (2) unjust enrichment; and (3) quantum meruit. D.E. 1–1, 22. Morning View removed this action to federal court on September 5, 2014, and filed a counterclaim for breach of contract on November 7, 2014. D.E. 1 and 25. Both parties now move for summary judgment as to each of ESI's three claims.[2]

2. Neither party moves for summary judgment as to Morning View's counterclaim.

## LEGAL STANDARD

■ Summary judgment is authorized only when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party bears the burden of proof, and when assessing whether the movant has met this burden, the court should view the evidence, any ambiguities therein and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967).

■ The party opposing summary judgment need not respond with evidence unless the movant has properly supported the motion with sufficient evidence. *Adickes,* 398 U.S. at 160, 90 S.Ct. 1598. However, the movant need not proffer evidence negating issues to which the opponent bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the motion is properly supported, the party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; instead, the nonmoving party must show that there exists some genuine issue of essential fact. *Id.; Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

■ If the record presents a genuine issue of material fact, the court must deny the motion. *Envtl. Def. Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). This may be the case where the parties agree on the basic facts but disagree about the inferences that should be drawn from those facts, so long as both inferences are reasonable. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969); *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

## ANALYSIS

Both parties move for summary judgment as to each of ESI's three claims. The Court considers each claim in turn.

*Breach of Contract*

■ "Federal courts adjudicating state law claims apply the substantive law of the state where they render decisions." *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1059 (11th Cir.2007) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Under Florida law, contractual choice-of-law provisions are presumptively valid. *Se. Floating Docks, Inc. v. Auto–Owners Ins. Co.,* 82 So.3d 73, 80 (Fla.2012) ("An agreement between parties to be bound by the substantive laws of another jurisdiction is presumptively valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's law would contravene a strong public policy of this State."). Here, the contract provides that its terms must be "construed and enforced in accordance with Florida law." Agreement, ¶ 26 (D.E. 61–1). And because the parties do not dispute that the choice-of-law provision is valid, or that Florida law applies, the Court will apply Florida law.

■ To state a claim for breach of contract under Florida law, a plaintiff must allege: (1) the existence of a contract; (2) a breach of that contract; (3)

causation; and (4) damages. *Handi–Van, Inc. v. Broward Cnty.*, 116 So.3d 530, 541 (Fla. 4th DCA 2013). While the parties agree that they entered into a valid and enforceable contract, they dispute whether Morning View breached that contract. ESI argues that Morning View breached the contract by failing to make monthly payments after ESI completed Phase One of the project. In response, Morning View argues that it was entitled to withhold payment until the completion the project in its entirety. Further, it argues that because ESI never completed the project, its failure to pay did not constitute a breach of contract. The Court finds Morning View's argument persuasive.

 In interpreting a contract, the Court is to give effect to the intention of the parties, and the best evidence of their intent is the contract's plain language. *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So.2d 381, 383 (Fla. 5th DCA 2005). Here, the language agreed to by both parties unambiguously entitles Morning View to withhold payment until ESI completed the project. *Prime Homes, Inc. v. Pine Lake, LLC*, 84 So.3d 1147, 1151–52 (Fla. 4th DCA 2012) (unambiguous terms, meaning those not subject to differing reasonable interpretations, must be enforced as written). Specifically, while Morning View was to make monthly payments of $3,686.00 for a period of five years, the five-year period was to begin "following the completion of the Work" and after ESI certified that "the installation work under th[e] Agreement [had] been completed." Agreement, ¶¶ 3, 4 (D.E. 6–11). And because the contract defines "the Work" as "the tasks enumerated in the Contract Documents together with such ancillary tasks and services which are reasonably inferable there from," [3] the "Work" includes all five phases of the project. Thus, because it is undisputed that ESI never completed the project, Morning View's five-year payment period never commenced.

 ESI argues that it is nonetheless entitled to payment under the doctrine of substantial performance. Under Florida law, where a party's incomplete performance is nonetheless substantial, such that it is nearly equivalent to what was bargained for, the breaching promisor is entitled to recover the full contract price less whatever damages are suffered by the promisee on account of the promisor's non-material breach. *Nat'l Constructors, Inc. v. Ellenberg*, 681 So.2d 791, 793 (Fla. 3d DCA 1996) (quoting *Ocean Ridge Dev. Corp. v. Quality Plastering, Inc.*, 247 So.2d 72, 75 (Fla. 4th DCA 1971)). However, even assuming *arguendo* that a reasonable jury could find that ESI's completing one of five phases constituted substantial performance, the doctrine of substantial performance applies only where the promisor's nonperformance was unintentional. *Nat'l Constructors, Inc.*, 681 So.2d at 793; *Lockhart v. Worsham*, 508 So.2d 411, 412 (Fla. 1st DCA 1987); *Lazovitz, Inc. v. Saxon Constr., Inc.*, 911 F.2d 588, 592 (11th Cir.1990). Here, it is undisputed that ESI voluntarily chose not to complete four of the five phases of the project because Morning View would not make payments in advance of completion. Thus, the doctrine of substantial performance does not apply.

Finally, in a last ditch effort to salvage its breach of contract claim, ESI asserts

---

**3.** ESI's interpretation of "the Work" as "a partial or full lighting retrofit" is not reasonable and is based on a misreading of a provision relating to the lighting design guide to be used in retrofitting the hotel's lighting. Agreement, ¶ 2 (D.E. 61–1) ("This Agreement shall be construed in accordance with the IESNA lighting design guide, whereby ESI will perform a partial or full lighting retrofit of the Project.").

that the payment schedule as originally agreed upon was subsequently modified by the parties. According to ESI, that modification was both explicit and implied by the parties' conduct. This argument fails for numerous reasons.

■ As a threshold matter, ESI fails to allege any modification, either express or implied, in its operative complaint. Instead, its pleadings refer only to "the Agreement," which is defined as the written agreement executed on November 1, 2012. Amended Complaint, ¶ 2 (D.E. 22). And while the pleading standard of Federal Rule of Civil Procedure 8(a) is a liberal one, it does not afford plaintiffs the opportunity to raise new claims or change the factual bases of claims at the summary judgment stage. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 779 (11th Cir.2014) (affirming the district court's refusal to permit the plaintiff to change the factual basis of her ADA claim at the summary judgment stage). As such, ESI may not salvage its breach of contract claim by asserting that Morning View breached some unalleged modification to the original payment schedule. *See Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, No. 806–CV–421–T–30EAJ, 2008 WL 786319, at *7 (M.D.Fla. Mar. 20, 2008) ("Plaintiff's assertion that Defendant breached an oral agreement ... is not referenced in the complaint, and thus is not properly before the Court."); *Tindol v. Alabama Dep't of Revenue*, No. 213–CV–92–WKW, 2015 WL 350623, at *24–25 (M.D.Ala. Jan. 23, 2015) (same).

Furthermore, ESI fails to proffer any evidence buttressing its bald assertion that the parties effectuated either an express or implied modification. And even if it

had, the contract provides that any change to the "contract time" could be accomplished "only by a written agreement executed by both parties." Agreement, ¶ 6 (D.E. 61–1). And where, as here, a written contract precludes oral and implied modifications, a breach of contract claim predicated on such modifications faces additional hurdles, which ESI fails to meet here. *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So.3d 989, 993 (Fla. 4th DCA 2014) ("The parties have dealt with the issue through a provision designed—and intended—to protect them against the risk of being enmeshed in, and harassed by protracted litigation based upon alleged oral modifications ... and courts should in most cases do no more than enforce the contract as written.") (internal quotations omitted).

■ First, oral and implied modifications precluded by a written agreement may be enforced only upon "clear and unequivocal evidence of a mutual agreement," which is wholly lacking in this case. *Fid. & Deposit Co. of Maryland v. Tom Murphy Const. Co.*, 674 F.2d 880, 885 (11th Cir.1982). Further, such modifications may be enforced only if the modification was "acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it." *Prof'l Ins. Corp. v. Cahill*, 90 So.2d 916, 918 (Fla. 1956). Here, ESI fails to submit evidence that it relied to its detriment on a modification to expedite the payment schedule, let alone that it relied on that modification in such a manner as would work a fraud on ESI.

■ In sum, ESI may not side-step Morning View's motion for summary judgment by relying on some unalleged modification to the contract. And even assuming *arguendo* that this shifty maneuver were permissible, ESI fails to proffer sufficient evidence supporting its argument; based

on the evidence presented, no reasonable juror could determine that: (1) there was either an express or implied modification to the agreement expediting the payment schedule; or (2) ESI relied on that modification in such a manner as would work a fraud on ESI. As such, the payment schedule as set forth in the written contract applies. And because that payment schedule unambiguously entitled Morning View to withhold all payments until ESI completed the project in its entirety, there exists no genuine issue that Morning View did not breach the contract by failing to pay ESI, which never completed the project. Accordingly, Morning View is entitled to summary judgment as to ESI's breach of contract claim.

*Unjust Enrichment and Quantum Meruit*

ESI alternatively brings claims of unjust enrichment and quantum meruit against Morning View.

 However, "a plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists." *Ocean Commc'ns, Inc. v. Bubeck,* 956 So.2d 1222, 1225 (Fla. 4th DCA 2007); *Kovtan v. Frederiksen,* 449 So.2d 1, 1 (Fla. 2d DCA 1984) ("It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter."). And because both parties agree that there exists a valid and enforceable express contract,[4] and even stipulate to the existence of an express contract in their Joint Pretrial Stipulation, (D.E. 82 at 9), ESI's equitable claims do not survive.[5]

## CONCLUSION

In accordance with the foregoing, it is hereby

ORDERED AND ADJUDGED that Morning View's Motion for Partial Summary Judgment, (D.E. 62), is GRANTED and ESI's Motion for Partial Summary Judgment, (D.E. 60), is DENIED. Summary judgment is hereby entered against ESI and in favor of Morning View as to each of ESI's three claims. Morning View's counterclaim remains pending.

---

**4.** While ESI argues that it is entitled to judgment on its equitable claims "in the event that there is some circumstance which renders the parties' Agreement unenforceable," neither party argues that such circumstances exist.

**5.** ESI neither alleges nor argues that its equitable claims survive to the extent ESI purportedly performed extra-contractual work at Morning View's request.